UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                                  Case No. 15-31811-DHW
                                                        Chapter 13
ALLEN HARVEY BOLEY,
ELIZABETH ANN BOLEY,

    Debtors.

# MEMORANDUM OPINION

    Before the court is the objection (Doc. #25) of Tri-Rivers Federal Credit Union (hereinafter Tri-Rivers) to the confirmation of the debtors' chapter 13 plan. Tri-Rivers' objection alleges that the plan has not been proposed in good faith. In particular, Tri-Rivers asserts bad faith because the debtors' plan provides for surrender of collateral which they are unable to deliver to the creditor.

    At the initial confirmation hearing on November 9, 2015, the parties advised the court that there was no material factual dispute. They proposed that a joint stipulation of facts be filed and that thereafter, each party would file respective briefs of law. Upon consideration of the facts and the law, the objection to confirmation of the debtors' plan will be overruled.

## Jurisdiction

    The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because the matter at issue here concerns the confirmation of a plan, this is a core proceeding under 28 U.S.C. § 157(b)(2)(L) thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Undisputed Facts

As noted, the parties have filed a joint stipulation of undisputed facts (Doc. #33). The court adopts the parties' stipulated facts as the facts in this case and summarizes them as follows.

On July 23, 2014, Tri-Rivers financed the joint debtor's, Elizabeth Ann Boley, purchase of a 2006 Ford F-350 truck. Mrs. Boley was not present when the transaction took place at Auto Connection, LLC. Instead, the Mrs. Boley's son was present and brought the paperwork to her for her signature. Mrs. Boley's son, not the debtor, took possession of the vehicle at the time of the purchase.

The first payment under the contract was due on August 23, 2014, however, Tri-Rivers posted the first payment on September 3, 2014. No other payment was ever made on the note.

Tri-Rivers attempted to repossess the vehicle but was unable to locate it in order to do so. The debtor knew that her son had taken the vehicle out-of-state but did not know where it was located.

In order for Tri-Rivers to file a claim with its insurance carrier, the debtor filed a stolen vehicle report with the police. The debtor, however, refused to sign an arrest warrant against her son for the theft of the vehicle, and as a result, Tri-Rivers' insurance carrier denied its claim.

On February 16, 2015, Tri-Rivers filed suit against the debtor. Judgment, in the amount of $24,173.32, entered in favor of Tri-Rivers and against the debtor on July 1, 2015.

On July 7, 2015, Mrs. Boley and her husband filed a joint petition for relief under chapter 13 in this court. The schedules accompanying that petition list the debt owed to Tri-Rivers as an unsecured deficiency balance for a repossessed vehicle.

As of September 16, 2015, Mrs. Boley was advised by her son that he had taken the vehicle to Baker, Montana where he hit an elk while driving the vehicle. The vehicle was towed, but Mrs. Boley's son did not know anything further concerning it.

As of September 18, 2015, following an investigation by the debtors' counsel, it was ascertained that the vehicle was located at the Baker Body Shop in Baker,

Montana. It was further learned that the vehicle was not wrecked, but instead, was towed due to transmission problems. The vehicle had been at the Baker Body Shop for almost a year where storage fees of $11,620.00 accrued. The vehicle remains at the Baker Body Shop and will not be released until the storage fees are paid. Neither Mrs. Boley nor her son have the ability to pay those fees.

## Conclusions of Law

Tri-Rivers objects to the confirmation of the debtors' plan alleging lack of good faith. Specifically, Tri-Rivers objects to the Mrs. Boley's proposal to surrender a vehicle of which she no longer has possession, and that doing so is bad faith. The court disagrees.

Surrendering property does not require delivery unto the creditor by the debtor. *In re Pratt*, 462 F.3d 14, 18 (1st Cir. 2006)("'[S]urrender' does not necessarily contemplate that the debtor physically have transferred the collateral to the secured creditor."); *In re White*, 487 F. 3d 199, 205 (4th Cir. 2007)("[T]he word 'surrender' means the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of property to another."); *In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014)("When a debtor states his intent to surrender collateral under §521(a)(2)(A), he complies with that intention, for purposes of §521(a)(2)(B), when he allows the secured creditor ... to obtain possession by available legal means without interference. The debtor is not required to take any affirmative action to physically deliver the property."); *In re Metzler*, 530 B.R. 894, 899 (Bankr. M.D. Fla. 2015)("[S]urrender, at a minimum, requires a debtor to relinquish secured property and make it available to the secured creditor. That does not mean ... that the debtor must 'deliver' the property to the secured creditor.").

Likewise, in the absence of bad faith, delivery is not only not required, it is also inconsistent with a debtor's entitlement to a fresh start.[1] *See In re Cornejo*, 342 B.R. 834 (Bankr. M.D. Fla. 2005)(finding that creditor's request that the debtor satisfy the mechanic's lien and physically deliver the vehicle was not feasible or

---

[1] "A fundamental purpose of the Code is to permit debtors to reorder their affairs, make peace with creditors, and enjoy a new beginning, unhampered by the pressures of preexisting debt." *In re Cornejo*, 342 B.R. 834, 837 (Bankr. M.D. Fla. 2005); *In re Johnson,* 318 B.R. 907, 920 (Bankr.N.D.Ga.2005) (citing *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

consistent with the principles of a fresh start.); *see also In re Alexander*, 225 B.R. 665 (Bankr. E.D. Ark. 1998)(finding the debtor not at fault in being unable to deliver the vehicle when the debtor's husband absconded with the vehicle); *see also In re Walton*, 243 B.R. 793 (Bankr. M.D. Ala. 1999)(finding that the amended plan was properly confirmed even though the amendment made was to surrender a vehicle which had been stolen and stripped and the debtor could not deliver the vehicle at time of confirmation.). Here, it was the debtor's son, without the knowledge of the debtor, who caused the vehicle to be held in a repair shop. Similar to *In re Alexander* and *In re Cornejo*, the facts presented here are absent of any culpable conduct or intentional concealment by the debtor. Thus, physical delivery of the vehicle is not required in order for Mrs. Boley to surrender the vehicle.

In contrast, Tri-Rivers relies on *In re Smith*, 207 B.R. 26, 30 (Bankr. N.D. Ga. 1997) wherein the court held that "[m]erely telling the creditor where it can find the collateral is not a surrender 'to such holder.'" Tri-Rivers also points to the recent holding in *In re Prior*, 2014 WL 585284 at *3 (Bankr. S.D. Ga. Feb. 13, 2014). There, the court held that in order to surrender collateral, the debtor must "in fact, surrender the property and not merely the debtor's interest in the property." The undersigned, however, is not persuaded.

In *In re Smith* the debtor took her vehicle to a repair shop, and subsequently tried to modify her plan post-confirmation to surrender the vehicle. Despite her knowledge of the vehicle's mechanical troubles and cost of repairs, the debtor did not notify the Trustee or creditor of the same prior to confirmation. The court in *In re Alexander* distinguished *In re Smith*, and noted that the debtor's decision to surrender the vehicle encumbered by repair bills immediately after confirmation was culpable conduct. *See In re Alexander*, *supra* at 666. In the present case, the debtor improperly listed the vehicles on her schedules as "repossessed." Although that description of the collateral's disposition was inaccurate, the facts are devoid of any evidence of deceitful intent. At no time did the debtor conceal the fact that she did not have possession of the vehicle.

Moreover, in this case Tri-Rivers received a judgment against the debtor prior to the bankruptcy filing. Therefore, requiring the debtor to physically deliver the vehicle in addition to surrendering her interest would enhance the rights that Tri-Rivers would have outside of bankruptcy. Again, this raises concerns regarding the debtors' entitlement to a fresh start. Without evidence of bad faith or culpable conduct on the debtor's part, physical delivery is not required in order to surrender the vehicle.

## Conclusion

For the foregoing reasons, it is

ORDERED that Tri-Rivers' objection to confirmation (Doc. #25) will be OVERRULED. A separate order will enter accordingly.

Done this the 12th day of January, 2016.

/s/ Dwight A. Williams, Jr.
Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtors
Gregory E. Tolar, Attorney for Debtors
Kristen P. Abbott, Attorney for Tri-Rivers
Tri-Rivers Federal Credit Union, Creditor
Curtis C. Reding, Trustee